IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENDRICK OYOLA, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:21-cv-00540-PX |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | * | |
| | * | |
| Defendant. | | |

\*\*\*

## MEMORANDUM OPINION

Pro se Plaintiff Kendrick Oyola ("Oyola") has filed suit against his former employer, Defendant Washington Metropolitan Area Transit Authority ("WMATA")[1] for violations of section 504 the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count I); section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 (Count II); 42 U.S.C. § 1983 (Count III); and section 7(a) of the National Labor Relations Act, 29 U.S.C. § 158(a) (Count V). He also brings common law claims of intentional infliction of emotional distress (Count IV) and civil conspiracy (Count VI). WMATA has moved to dismiss all counts. The issues are fully briefed, and the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the Court GRANTS Defendant's motion and dismisses this action with prejudice.

**I. Background**

Oyola represents himself and so the Court must read the Complaint facts as true and most favorably to him. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020), *cert. denied sub nom. Kopitke v. Bell*, 141 S. Ct. 1388 (2021). However, the alleged incidents underlying the claims are presented somewhat haphazardly,

---

[1] The Amended Complaint additionally references "Concentra" and the "Washington Metro Safety Commission" as Defendants. ECF No. 30. Neither of these entities appear to have been served with process, and so the Court does not consider them proper parties to this action.

making it difficult to discern the full context of the relevant allegations.  That said, the Court accepts as true the following account.

WMATA is a "tri-jurisdictional government agency that operates transit services in the Washington metropolitan area."  ECF No. 30 ¶ 9.  Its commuter rail system which runs through Maryland, Washington, D.C., and Virginia is particularly relevant here.  *Id.* ¶ 11.  Oyola began working for WMATA as a mechanic for that rail system on October 1, 2001.  *Id.* ¶¶ 8 & 13.  Oyola suffers from asthma, dyslexia, attention deficit hyperactivity disorder ("ADHD"), and generalized anxiety disorder.  *Id.* ¶ 13.  Nonetheless, he consistently received favorable performance evaluations and was even tasked with helping WMATA rewrite safety policies.  *Id.* ¶ 14.

In early 2018, Oyola became increasingly troubled by WMATA's safety protocols.  Of particular note were two train derailments that occurred in January 2018 and February 2019 brought about by inclement weather.  ECF No. 30 ¶¶ 17, 23, 25.  Concerned that "WMATA['s] safety culture" was rapidly declining, Oyola began to request that WMATA conduct formal safety investigations.  *Id.* ¶¶ 17, 19, 23.  He also met with "high-ranking" human resources personnel at WMATA to discuss both accidents.  *Id.* ¶¶ 24 & 25.  But according to Oyola, WMATA officials were largely uninterested in his safety recommendations.  *Id.* ¶¶ 23, 25, 54, 81.  Nor did WMATA consult with him before releasing any findings on the cause of the derailments.  *Id.* ¶¶ 79 & 81.

At the same time, WMATA leadership began what Oyola describes as a relentless campaign of "harassment" against him that culminated in his termination.  ECF No. 30 ¶ 19.  At the height of this harassment, on March 14, 2019, Oyola's supervisors ordered that he participate in a "fitness for duty" examination.  *Id.* ¶ 26.  The examination consisted of a physical evaluation

to be performed by third-party provider, Concentra, and a mental health evaluation with a counselor in WMATA's employee assistance program ("EAP"). *Id.* ¶ 27.

Oyola did not participate in the evaluations. ECF No. 30 ¶ 29. As a result, WMATA suspended him on March 28, 2019, for two weeks with pay, followed by four weeks without pay. *Id.* ¶¶ 29 & 34. During the suspension, WMATA sent Metro Transit Police Department officers to Oyola's home to retrieve his work identification badge, disabled his email account, and placed him on a "Be on the Look Out" list. *Id.* ¶ 32. Oyola further alleges that he was briefly "detained" by police officers who were conducting a background check. *Id.* ¶ 33. Oyola complained about his treatment through the WMATA whistleblower hotline. *Id.* ¶ 33.

On May 8, 2019, Oyola returned to work after WMATA agreed to provide him certain accommodations as required under the Americans with Disabilities Act, 42 U.S.C. § 12111(9) ("ADA"). ECF No. 30 ¶¶ 35–36. However, Oyola was assigned to a new location and contends such accommodations did not "travel" with him. *Id.* ¶ 36.[2] He also maintains that he was subjected to "workplace violence" when he went to WMATA's Medical Department to drop off medical documents that he was having difficulty transmitting by email and a security officer physically blocked the exit for a "long" time. *Id.* ¶ 37. Oyola responded by complaining to WMATA's General Manager about perceived harassment and asked that the "accommodation" of ending the harassment be provided to him. *Id.* ¶ 39.

On July 1, 2019, WMATA ordered that Oyola undergo a three-and-a-half hour mental health evaluation. ECF No. 30 ¶ 40. Oyola requested the presence of a companion or union representative, as well as permission to take breaks during the evaluation, both of which he asserts were denied. *Id.* Oyola also alleges that the evaluator threatened him with disciplinary

---

[2] The Amended Complaint does not explain what accommodations WMATA had granted Oyola or what is meant by the accommodations not "traveling" with him.

3

action if he did not answer her questions. *Id.* On the same day of the evaluation, Oyola also met with "WMATA transit detectives" and WMATA's Chief Medical Officer. *Id.* ¶ 41. According to Oyola, the Chief Medical Officer touched him repeatedly without his consent and openly discussed his confidential medical information in front of the detectives. *Id.* In addition to these events, a random drug screen revealed the presence of amphetamines in Oyola's system, which Oyola maintains are in his ADHD medication. *See id.* ¶ 42; *see also* ECF No. 30-1 at 17. Nonetheless, WMATA recommended that Oyola participate in a drug abuse program and anger management training. ECF No. 30 ¶ 44. Oyola refused both requests. *Id.* On August 16, 2019, WMATA fired Oyola for allegedly violating the "Substance Abuse and Employee Assistance Program," its "Workplace Violence Policy," and the "Metro Safety Rules and Procedures Handbook." *Id.* ¶ 16. Oyola instead avers that he was terminated because he had complained to WMATA's leadership about the safety violations surrounding the 2018 and 2019 derailments, and in response to his ADA accommodations request. *Id.* ¶¶ 45 & 59.

Accordingly, on May 29, 2019, filed a formal charge of discrimination with the United States Department of Labor ("DOL"). ECF No. 30 ¶ 5. The DOL ultimately adjudicated the claims in favor of WMATA and issued Oyola a right-to-sue letter. *Id.* Oyola next filed suit timely in this Court. ECF No. 1. WMATA moved to dismiss all claims against it on April 26, 2021. ECF No. 10. Oyola responded with a flurry of filings which, at the direction of the Court, culminated in a single Amended Complaint that WMATA now moves to dismiss.[3] ECF Nos. 30 & 39.

---

[3] Despite the Court having warned Oyola that all operative facts supporting the Amended Complaint must be included solely in that pleading, *see* ECF No. 28 at 2, he attempts to raise new facts in his response to the motion to dismiss. The Court will not consider those facts in resolving WMATA's motion. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (explaining that plaintiffs are "bound by the allegations contained in [their] complaint and cannot, through the use of motion briefs, amend the complaint").

4

**II.     Standard of Review**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and viewed in the light most favorable to him.  *Twombly*, 550 U.S. at 555.  Factual allegations, however, "must be enough to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555.  "'[N]aked assertions of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).  Although pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

5

### III. Analysis

WMATA argues that all the claims fail as a matter of law. The Court turns first to the federal statutory claims.

#### A. Rehabilitation Act (Count I)

Section 504 of the Rehabilitation Act prohibits public employers like WMATA from discriminating against an employee on account of a known disability. 29 U.S.C. § 794(a); *see also Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 413 (4th Cir. 2015). The Amended Complaint appears to aver that WMATA first discriminated against Oyola in 2018 by denying certain accommodations requests, and then by requiring him to engage in mental health and medical evaluations in 2019. *See* ECF No. 30 ¶ 59. Oyola further appears to suggest that both his suspension and termination were motivated by discriminatory animus. *See, e.g.*, *id.* ¶¶ 8, 14–16 (broadly alleging that Oyola met his employer's legitimate expectations but was terminated after being subjected to "discriminatory medical exams and practices").

As to the earlier allegations, WMATA correctly argues they are time-barred. ECF No. 39-1 at 22–23. For violations of Rehabilitation Act, this Court "borrow[s] the time limit from the most analogous state law claim." *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 657 (4th Cir. 2018). Thus, for these incidents, the Court looks to analogous state violations proscribed by the Maryland Fair Employment Practices Act, which provides a two-year limitations period. *Id.* at 657–58. Oyola filed suit on March 10, 2021. ECF No. 1. Accordingly, any allegations predating March 10, 2019 are time-barred.

For those events that took place after March 10, 2019, WMATA argues that while the Amended Complaint alleges a series of events after that date, none give rise to the inference that

6

Oyola had been adversely treated on account of his disability. ECF No. 39-1 at 22–24. When reading the Amended Complaint most charitably to Oyola, the Court must agree.

Because Oyola does not aver any facts reflecting direct disability discrimination, the claim proceeds under the *McDonnell Douglas* burden-shifting framework. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996); *see also Munoz v. Baltimore Cnty.*, No. RDB-11-02693, 2012 WL 3038602, at *6 (D. Md. July 25, 2012). *McDonnell Douglas* requires the plaintiff to make a *prima facie* showing that he "(1) has a disability; (2) is otherwise qualified for the employment; and (3) was excluded from that employment due to discrimination solely on the basis of [his] disability." *Reyazuddin*, 789 F.3d at 418. If the plaintiff makes the *prima facie* showing, the burden shifts to the employer to demonstrate that it had a legitimate, non-discriminatory reason for its employment action. *Id.* at 419. If the employer has made that showing, the burden shifts back to the employee to demonstrate that this stated reason was merely pretext for discrimination.

Importantly, however, at the pleading stage, the plaintiff is not held to precisely the same burden shifting requirements as at trial. *See, e.g.*, *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 505 (D. Md. 2019). He need not aver every fact sufficient to make the *prima facie* case. That said, the plaintiff still must plead *some* facts which make plausible that the employer discriminated against him solely on account of his disability. *Reyazuddin*, 789 F.3d at 418. On this measure, the Amended Complaint falls short.

Viewed favorably to Oyola, the Amended Complaint plausibly avers that he suffers from several physical and mental ailments which qualify as disabilities under the ADA and that he was able to meet WMATA's job expectations. *See* ECF No. 30 ¶¶ 1, 13, 14, 39. Further, the Amended Complaint makes plausible that Oyola had been suspended without pay and then

terminated, which are both actionable adverse employment actions. *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999); *Shivers v. Saul*, No. JKB-19-2434, 2020 WL 7055503, at *5 (D. Md. Dec. 2, 2020); *Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 705 (D. Md. 2003).

Critically missing, however, are any facts which make plausible that WMATA took such adverse actions on account of his disabilities. To be sure, the Amended Complaint avers Oyola's suspension and termination arose when he refused to comply with certain programs and evaluations related to his medical and mental health conditions. ECF No. 30 ¶ 59. But alleging termination for failure to follow certain employment directives cannot be enough.[4] For one, evaluations of this kind are a common feature of the "interactive process" between employers and employees as part of the accommodations process. *See, e.g.*, *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 27 (D.D.C. 2002), *dismissed,* No. 02-5160, 2002 WL 1560032 (D.C. Cir. July 16, 2002) (citing cases). Likewise, for jobs involving public health and safety, employers routinely require medical fitness for duty evaluations. *See, e.g.*, *Kowitz v. City of Portland*, No. 16-598-SI, 2019 WL 542271, at *4 (D. Or. Feb. 11, 2019), *aff'd,* 796 F. App'x 437 (9th Cir. 2020); *Pa. State Troopers Ass'n v. Miller*, 621 F. Supp. 2d 246, 256 (M.D. Pa. 2008); *Thomas v. Corwin*, 483 F.3d 516 (8th Cir. 2007). In this respect, employers must be given some latitude to sanction an employee's refusal to participate in the evaluation process without such sanction automatically giving rise to an inference of discrimination. Thus, the mere averment that Oyola

---

[4] The Amended Complaint comes closest to stating a Rehabilitation Act claim when averring that Oyola had been sanctioned after testing positive on a mandatory drug screen because of his ADHD medication. ECF No. 30 ¶ 42. But when reading the averred facts most favorably to Oyola, it is clear that the failed drug screen merely prompted WMATA to place Oyola in a mandatory substance abuse program. *Id.* ¶ 44. And neither required drug testing nor employer-mandated treatment programs constitute an adverse employment action. *See Vuono v. Consol. Edison of New York, Inc.*, No. 18-1635 (VEC), 2019 WL 2433654, at *2 (S.D.N.Y. June 11, 2019) (citing cases); *see also Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999) (listing "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" as "typical" adverse employment actions)

8

had been suspended and fired for failing to participate in such evaluations is insufficient to sustain the claim. Count I will be dismissed.

### B. Patient Protection and Affordable Care Act (Count II)

Oyola next alleges that WMATA's discriminatory practices violated the Patient Protection and Affordable Care Act (the "ACA"). *See* ECF No. 30 ¶ 62. The ACA prohibits an employer from excluding or denying an employee the benefits of any "health program or activity" for which the employer receives federal financial assistance on account of a disability. 42 U.S.C. § 18116 (Section 1557 of the Act bars discrimination on the grounds of race, color, national origin, sex, age, and disability). But again, even accepting as true that WMATA's EAP program qualified for ACA protection, *see* ECF No. 30 ¶ 63, no facts make plausible that Oyola had been "excluded from participation in," or "denied the benefits of," or "subjected to discrimination under" the EAP because of his disabilities. *See* 42 U.S.C. § 18116.

In support of the claim, Oyola points to WMATA's failure to investigate his complaints about Concentra as an alleged "uncertified" third party provider, and that WMATA, through Concentra, denied Oyola access to his medical records. *Id.* ¶ 64. These facts, taken as true and most favorably to Oyola, perhaps describe WMATA's ill-conceived choice in hiring Concentra or demonstrate that Concentra treated Oyola poorly. *Cf. Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 694–96 (E.D. Pa. 2015) (dismissing ACA claim where plaintiffs alleged drug manufacturer unfairly price-gouged a highly effective treatment). But they do not make plausible that WMATA, through Concentra, provided any different care to Oyola than it did any other WMATA employee on account of his disability. *Cf. Rumble v. Fairview Health Serv.*, No. 14-2037 (SRN/FLN), 2015 WL 1197415, at *1, 16 (D. Minn. Mar. 16, 2015) (ACA claim plausible where treating physician made "offensive references about Plaintiff's gender

identity" and subjected the plaintiff to a "painful" physical examination which amounted to an assault); *Callum v. CVS Health Corporation*, 137 F. Supp. 3d 817, 831, 853 (D.S.C. 2015) (alleging certain ADA accommodations were denied to an African American customer but provided to a white customer).  Because the averred facts do not make plausible that Oyola had been treated disparately on account of his disability, the claim will be dismissed.

### C.  42 U.S.C. § 1983 (Count III)

Count III asserts that WMATA's conduct violated Oyola's constitutional rights under the Fourth and Fourteenth Amendments.  ECF No. 30 ¶ 67.  Section 1983 provides a statutory remedy for violations committed by any "person" acting under color of state law who deprives another of their "rights, privileges, or immunities secured by the Constitution and laws.'"  42 U.S.C. § 1983; *see also Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 210 (4th Cir. 2007).  WMATA, however, is not a "person" capable of being sued under this statute.  *See, e.g.*, *Tapp v. WMATA*, 306 F. Supp. 3d 383, 394 (D.D.C. 2016); *Cutchin v. District of Columbia*, 174 F. Supp. 3d 427, 430 (D.D.C. 2016); *James v. WMATA*, 649 F. Supp. 2d 424, 430 (D. Md. 2009); *Disability Rts. Council of Greater Washington v. WMATA*, 239 F.R.D. 9, 20 (D.D.C. 2006); *Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 7–8 (D.D.C. 1998).

Nor has Oyola made plausible that this claim could proceed under a *Monell* theory of liability.  *See* ECF No. 30 ¶ 6 (alleging WMATA engaged in a pattern or practice of discrimination).  Under *Monell*, a municipality may be held liable under section 1983 if it maintains an unconstitutional practice or custom that violated the plaintiff's constitutional rights. *See Palma v. Montgomery Cnty.*, No. 21-1090-PX, 2022 WL 1092345, at *4 (D. Md. Apr. 12, 2022) (citing *Shaw v. Maryland*, No. ELH-18-782, 2019 WL 4447256, at *15 (D. Md. Sept. 16, 2019)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  But just as WMATA is not

a "person," it is also not a "municipality" and therefore is not susceptible to suit on this basis either. *See Austin v. WMATA*, No. 19-2718 (DLF), 2020 WL 2962609, at *13 (D.D.C. May 28, 2020) (explaining that WMATA is an interstate compact, not a municipality). Accordingly, the claim must be dismissed.[5]

### D. National Labor Relations Act (Count V)

Count V avers that WMATA violated the National Labor Relations Act (the "NLRA") when it withheld from Oyola the results of the safety audit pertaining to the 2018 and 2019 derailments. ECF No. 30 ¶ 79. But the NLRA, by its own terms, applies only to "any State or political subdivision." 29 U.S.C. § 152. WMATA is "an interstate compact agency," which functions as an "instrumentality of Maryland, Virginia, and the District of Columbia." *James v. WMATA*, 649 F. Supp. 2d 424, 429 (D. Md. 2009). Thus, WMATA is not subject to the NLRA. *See Dove v. WMATA*, 402 F. Supp. 2d 91, 98 (D.D.C. 2005), *aff'd,* No. 05-7118, 2006 WL 7136123 (D.C. Cir. Mar. 13, 2006) ("WMATA is not an 'employer' within the meaning of the NLRA."); *Diven v. Amalgamated Transit Union Int'l & Loc. 689*, 38 F.3d 598, 601 (D.C. Cir. 1994) ("WMATA is a political subdivision of two states, and the presence of the District of Columbia in the compact does nothing to alter the nature of WMATA as a political subdivision."). This claim, too, is dismissed.

---

[5] Oyola's invocation of the *Ex parte Young* doctrine is unavailing. *See* ECF No. 41 at 10. In *Ex parte Young*, the Supreme Court explained that federal jurisdiction may lie "against a *state official* when [the] suit seeks only prospective injunctive relief." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996) (emphasis added); *see also Ex parte Young*, 209 U.S. 123 (1908). Oyola has neither sued a state official nor limited his requested relief to an injunction. *See generally* ECF No. 30. Thus, the *Ex parte Young* doctrine has no bearing on this case.

### E.  State Common Law Tort Claims (Counts IV and VI)

The Court next treats the common law tort claims collectively.  As to both, WMATA correctly argues that it is immune from suit pursuant to the Eleventh Amendment to the United States Constitution.  *See* ECF No. 39-1 at 10.  The Eleventh Amendment protects a state and its instrumentalities from citizen suits in federal court absent waiver of such immunity.  *See Schindler Elevator Corp. v. WMATA*, 16 F.4th 294, 297 (D.C. Cir. 2021); *see also Woods v. WMATA*, No. PWG-18-3494, 2019 WL 3766508, at *3–4 (D. Md. Aug. 9, 2019), *aff'd*, 785 F. App'x 188 (4th Cir. 2019).  Specifically, pursuant to the interstate compact which created WMATA, the agency expressly retains immunity for "quintessentially governmental" or "discretionary" functions as opposed to "proprietary" functions.  *See, e.g.*, *Schindler Elevator Corp.*, 16 F.4th at 297; *Delon Hampton & Assocs., Chartered v. WMATA*, 943 F.2d 355, 359 (4th Cir. 1991).  Actions which involve "hiring, training, and supervision of WMATA personnel" remain the kind of discretionary functions for which WMATA is immune from suit.  *Woods*, 2019 WL 3766508, at *3.

The entirety of Oyola's common law claims concern WMATA's employment relationship with him.  *See generally* ECF No. 30.  Oyola particularly takes issue with WMATA's decision to punish him for failing to undergo required evaluations and the supposed concerted effort to secure his termination.  *Id.* ¶¶ 15 & 45.  But even accepting those representations as true, the entirety of WMATA's decision making concerns the supervision and employment terms of Oyola as an employee.  These are squarely discretionary functions for which WMATA enjoys protection from suit.

In response, Oyola seems to argue that because his allegations concern "safety" in transit, the claims are more "proprietary" in nature.  *See* ECF No. 41 (quoting *McKenna v. WMATA*, 670

F. Supp. 7, 11 (D.D.C. 1986)). Oyola misreads the applicable precedent. Decisions involving employee hiring, retention and supervision are discretionary even where public safety is implicated. *See Woods*, 2019 WL 3766508, at *3. Thus, because WMATA enjoys Eleventh Amendment immunity from suit as to common law tort claims, the common law claims are dismissed.

## IV. Dismissal of the Amended Complaint with Prejudice

Oyola has inundated this Court with hundreds of underlying documents, which have all been examined. The Court has also given Oyola an opportunity to amend his original complaint so that he advances all facts and claims in one pleading. From this, the Court cannot discern how Oyola could correct the above discussed pleading defects. Accordingly, further amendment of pleadings appears futile. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming district court's dismissal with prejudice when "it [was] clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"). The Amended Complaint, therefore, must be dismissed with prejudice.

A separate Order follows.

May 27, 2022                                                    /s/
Date                                                             Paula Xinis
                                                                 United States District Judge